EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii

MICHAEL K. KAWAHARA 1460
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  541-2850
Facsimile:  541-2958

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 04-0399DAE-06 |
| | ) | |
| Plaintiff, | ) | MEMORANDUM, RE: DEFENDANT'S |
| | ) | PLEA TO COUNT 4 OF SECOND |
| vs. | ) | SUPERSEDING INDICTMENT; |
| | ) | EXHIBITS "1", "2", AND "3" |
| DAWN R. GALARITA, | ) | |
| | ) | Sentencing Hearing: 11/8/06 |
| Defendant. | ) | at 2:30 p.m., before the |
| | ) | Hon. David A Ezra, U.S. |
| _____ | ) | District Judge |

## MEMORANDUM, RE: DEFENDANT'S PLEA TO COUNT 4 OF THE SECOND SUPERSEDING INDICTMENT

18 U.S.C. 2232(a) provides in pertinent part as follows:

> Whoever, before, during or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfer, <u>or otherwise take any action</u>, . . . for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under its lawful custody and control, [has committed a Federal crime][empahsis added].

In the Second Superseding Indictment herein, defendant was

charged in Count 4 with this quoted offense and 18 U.S.C. 2

(aiding/abetting).  As charged in Count 4 of the Second Superseding Indictment, defendant:

> before seizure of property by the [FBI], and in order to prevent the seizure of a 1989 BMW automobile and a 2002 Ford pickup truck by the [FBI], <u>did prepare documents for the 1989 BMW automobile and the 2002 Ford pickup truck to transfer title and ownership of said property</u>. [emphasis added]

These vehicles belonged to co-defendant Sham Vierra, who by defendant's own admission she knew was involved in drug trafficking.  The theory of criminal liability for defendant was that by preparing the requisite documents for Vierra to transfer ownership to his children in order to avoid their seizure by the FBI, defendant had, in the statute's words, "taken any action, . . . for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding".  In this connection, it should be noted that an actual transfer or other disposition of the subject property is unnecessary.  Under the statutory language, it is sufficient that defendant took some action for the purpose of "preventing or impairing the Government's" ability to do so.

    The relevant facts herein indicate that at about 12:50 a.m. on Sunday, August 22, 2004, Sham Vierra's residence was searched by FBI and MCPD and approximately 1,1015 grams of methamphetamine,[1] $2,960 in cash, and drug paraphernalia was

---

[1] As Vierra described this methamphetamine to defendant in a telephone call on 8/23/04 (discussed below in this memorandum),

recovered. However, Vierra was not arrested at this time. <u>See</u> para. 12 of Presentence Investigation Report (PSR).

One day later, on Monday, August 23, 2004, there was an intercepted call between Vierra and defendant.[2] In this call, defendant confirmed, in response to Vierra's inquiry, that she had all of his car papers. In explanation for the inquiry, Vierra said that "I got caught", and "I got caught Saturday night".[3] Vierra further said to defendant that "I cannot have these cars under me, they going impound everything. It's federal, that's why, not state". Vierra said that he wanted to "sign 'em all off to my kids, sign 'em all over". Vierra also said to defendant that "I go fucking prison. . . . I gotta get, I gotta get one lawyer. . . . It's federal, this, it's not state, eh", and Vierra thereafter told defendant: '[t]hat's why it's fucked. They never arrest me that night. I don't know why I never got arrested. They tell me, brah, most guys get arrested for the amount. <u>I had one, fuck, I had one big amount</u>". [emphasis added]

---

"I had one big amount".

[2] For the Court's information, a transcript of this intercepted call is attached hereto as Exhibit "1".

[3] As hereinbefore indicated, the search actually commenced during the early morning hours of Sunday, August 23; however, inasmuch as the search occurred during the night hours, it is understandable that Vierra said the search occurred on Saturday night (August 22).

In a subsequent telephone call on Tuesday, August 24, 2004, defendant told Vierra that "I get your papers", to which Vierra replied to hold on to them, because he had to "to go one FBI office right now".[4]  With respect to defendant's automobile papers, defendant explained to Vierra what she had done to assist him and what he had to do to implement the transfer, as follows:

> Defendant [DG]: I went fill out like as much as I could and then.
>
> Vierra [SV]: On what?
>
> Defendant: Uh, for the papers, eh, for you sign 'em over to your kids.  Like the address and whatever, where you need to sign.
>
> Vierra: Oh, yeah?
>
> Defendant: Yeah.
>
> Vierra: I just, I just gotta sign.  Where I gotta sign my name?
>
> Defendant: You gotta, you gotta just sign your name and then you gotta have your, where, who you going give 'em, put 'em under?  Your daughter?
>
> Vierra: I put 'em, my, my, my daughter and my son.
>
> Defendant: Oh.  They just, they gotta sign off, too, and then you gotta put their address and, you gotta turn in one portion and then they gotta just bring 'em in and...
>
> Vierra: Why they gotta turn in one portion, what portion they gotta turn in?  The top portion you telling me, uh?
>
> Defendant: The, yeah, the top portion, saying that.
>
> Vierra: [unintelligible]

---

[4] A transcript of this telephone call is attached hereto as Exhibit "2".

>Defendant: You transferring it.
>
>Vierra: I no gotta do that, though, eh?
>
>Defendant: All you gotta do is drop 'em off.
>
>Vierra: That's only for my protection, actually, right?
>
>Defendant: Right.
>
>Vierra: [Unintelligible] whatever, seven days, I not liable if anything happen, eh?  Right?
>
>Defendant: Right.  <u>But even if you put the transfer date as of, like last week, you know what I mean, before, before all this happened</u>. [emphasis added]

To reiterate her advice to Vierra about backdating the transfer date when he signed the paperwork, defendant later said in this telephone conversation, "[t]hen, it's, you know what I mean?  So you no put 'em like now, then going be obvious.  You know what I mean?"  As if to reiterate the sham nature of this transfer to his children, Vierra then joked to defendant "I hope my kids no fuck me over".

Defendant's residence was searched by the FBI and MCPD on September 30, 2004.  Among the evidence recovered from defendant's residence were Sham Vierra's original, certificates of title for the vehicles identified in Count 4 of the Second Superseding Indictment (a copy of which is appended hereto as Exhibit "3").  Consistent with what defendant had said in her last telephone call with Vierra, she had filled-out the "Notice of Transfer" portions of these certificates (located at the top of these documents) as best she could, i.e., she had handwritten

therein Vierra's address and had marked with "X's" the spaces where Vierra had to sign and fill-in his childrens' names.  Most important, however, was defendant's accompanying handwritten note affixed to these certificates of title.  In this note, defendant had identified the attachments as "ownership papers" and as a further reminder, she had also written at the top of this note the following words: "Transfer as of 8/18/04- Prior to Saturday 8/21".[5]  The dates referenced herein are very significant; as Vierra had previously informed defendant during their first telephone call, he had gotten "caught" on Saturday night (that is, 8/21/04), and "8/18/04" would have been several days before the FBI/MCPD search of Vierra's residence.  Defendant's reminder in this note was consistent with her prior telephonic advice to Vierra to backdate the vehicle transfer to his children.

   That defendant had arranged Vierra's certificates of title in this fashion with her accompanying handwritten note made sense, because as she advised MCPD subsequent to her arrest on September 30, 2004, Vierra was supposed to come by to pick up his papers, but he never showed up.

   The bottom line is that the charge in the superseding indictment to which defendant had very forthrightly and

---

   [5] This handwritten note is the first page of appended Exhibit "3".  This is the best copy that is currently available, because we understand that the MCPD has already returned the original evidence back to defendant.

voluntarily pled guilty sets forth a cognizable offense under the statute, and there is an adequate factual basis to support the plea.

DATED: Honolulu, Hawaii, November 8, 2006.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By /s/ Michael K. Kawahara
   MICHAEL K. KAWAHARA
   Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served Electronically through CM/ECF:

Clayton K. Kimoto    <u>ckimoto@hawaii.rr.com</u>    November 9, 2006

   Attorney for Defendant
   Dawn R. Galarita

                                           <u>/s/ Michael K. Kawahara</u>